Noble Prestige versus Craig Thomas Galle, I think. Good morning, Jim McCann representing Craig Galle individually and as conservator for Paul Horn and also the Galle Law Group, which is Mr. Galle's PA. This court entered an order on May 11th, last Thursday, that I would like to address primarily and for most of my argument because it goes directly to the two issues that are the most troublesome in this case. And those two issues are the improper resubmit entry of an injunction against the asset held in the custody of the Denver Probate Court and the improper finding of subject matter jurisdiction over the claim against Mr. Galle individually. Now, these two issues, to me, do not seem inextricably intertwined and for that reason, if that's so, then we would not have pendant appellate jurisdiction to review the order denying the motion to dismiss for lack of subject matter jurisdiction insofar as it is a direct order against your client, okay? Okay. It seems to me we can very separately and distinctly analyze that question and I'll say I think the absence of a written agreement between Mr. Galle and Noble could likely be a big problem for any effort to confirm what I view as really a sanctions award, okay? But to me, that's totally separate from the question about the interference with what is essentially the NREP jurisdiction of the Denver Probate Court. Let me explain how they're intertwined. You're absolutely correct. It seemed to me you'd be in a really good position if they said they're not and that there's a problem with the NREP jurisdiction and vacated the preliminary injunction. Oh, there absolutely is, but I feel obligated to answer your honor's questions. Okay, so you have the order on the motion to dismiss, which is against Mr. Galle individually, right? Not as conservatory, right? And the preliminary injunction is him as conservatory. The preliminary injunction is against him as conservatory of the assets of the Denver Probate. I think they're distinct and separate things, not inextricably intertwined. The problem is that the order, the injunction ties up funds not only held in the Denver Probate Court for the benefit of Mr. Horne under the claim of noble against Mr. Horne, but the injunction also ties up funds held for Mr. Horne to secure a personal individual judgment against Mr. Galle. Yeah, but if we vacate the injunction because it's an interference with the NREP jurisdiction of the Denver Probate Court, there's not a problem. Solves the problem. Right. Solves the problem. We don't have to say anything. Absolute. About the sanctions award against Mr. Galle. Absolute. Solves the problem because they're not inextricably intertwined. Well, I don't know what the court's going to rule. If the court rules that the injunction should stand for some reason. Right. If we were to agree with you that this preliminary injunction must be vacated for any number of reasons. First, for the reason that Chief Judge Breyer mentioned, maybe for a variety of other reasons. No bond. None of those reasons have anything to do with the question on the motion to dismiss Galle named individually. That's a separate question. It's distinct. I can answer one question without addressing the other. Isn't that right? If you answer the second question the way we want you to answer the question. Yes, absolutely. Absolutely. Why don't you go on then to the injunction?  Talk about the injunction. All right. Let's talk about the injunction. And again, the injunction, we have raised all of these various issues and they come up in the cases and we've cited a lot of cases here. Federalism, abstention, full faith and credit, on and on and on. Various, probably six or eight different reasons here. But fundamentally, you do not allow a court to enjoin funds that are held in the custody of another court. And the Denver probate court has not only held these funds for six years now, the Denver probate court also appointed the conservator, supervised the litigation and approved the that got these funds out of AT&T Mobility, put them in the Denver probate court for Noble to make a claim against them. So what's your best, pick your best abstention doctrine. You know, if I had a deck of cards, pick which one is the best one that you'd like to argue to me. I think the best one is found in Marshall versus Marshall. The probate exception. It's probate exception. But the language in there says the first court to get custody of a race does not get interfered with by another court. It's really Princess Lita, isn't it? I'm sorry? Isn't that Princess Lita, then? I'm sorry, Princess Lita. Princess Lita, Marshall versus Marshall. The Colorado River case. This is prior exclusive jurisdiction. Prior exclusive possession. Possession. It's arguably, let me finish, slightly different from classic Younger v. Harris, right? It's a little different. A little different. But if one court has custody of the race, the other courts don't interfere with it. There's all kinds of different doctrines. Princess Lita was. State court actually could enjoin a federal court that purports to exercise interim jurisdiction after the state court has done so. Well, we haven't. We haven't gone there. We haven't gone there. But I think that I agree. I mean, this is a really peculiar area of federal jurisdiction. Yes. When have we applied extension? I have to say that this is it's a bit of an odd case because you're really not seeking to abstain the entire case. You're seeking to abstain the injunction. In fact, the only time you brought up abstention was at the injunction stage, not in the motion to dismiss, correct? That is correct because I believe that Noble could go to the Southern District of Florida, pushing aside all the jurisdictional issues we raised on the motion to dismiss, which are not before your honor, and ask for the entry of a judgment. A judgment confirming the arbitration award. Arbitration award. And once he gets that, once Noble gets that, he can then go out to the Denver probate court and say, here's my arbitration award. Here's my judgment. Do you agree there could be prejudgment attachment? Again, I know there's legal problems with it. In other words, under Rule 64, Florida state law doesn't allow it. But let's assume that there was state law and they did seek it under Rule 64 and Florida state law did authorize it. They could get prejudgment attachment over just assets generally. Yes, but not funds in the custody. I understand, but there's nothing wrong with seeking prejudgment. I don't think there's anything wrong with seeking prejudgment attachment. Did they seek in their motion? Forget what the district court said in its injunction order. Did they seek prejudgment attachment of those assets that were held by the court? Or did they seek prejudgment attachment of $5 million so that we get to satisfy our judgment? They didn't seek prejudgment attachment of anything. Well, they sought an injunction. They sought an injunction. I apologize. Did they seek an injunction over assets held by the Denver probate court? Or did they seek an injunction generally to enjoin $5 million so we can satisfy our judgment when we get it? In the ex parte motion for TRO, they did not mention the Denver probate court. So the fact that the funds were in custody of the Denver probate court. Right. So that's where I guess I'm a little confused by because they don't seek to do anything that we agree violates any sort of abstention doctrine in their petition, which is what started this thing. In their ex parte motion, they don't seek to do anything that would violate anything to do with any of the abstention doctrines. So this really only comes up when the district court issues its order. And then suddenly we're supposed to abstain because the district court did something that I wasn't asked to do. That seems an odd procedural posture to me is the only way I know how to put it. Well, the problem is, though, from a very practical standpoint, in their initial petition, Noble knew that the monies were in the custody of the Denver probate court. They knew it from the minute that the Denver probate court got it. They just didn't tell that this guy may be sitting on a pot of gold in some jungle in Thailand. Nobody knows. And it doesn't really matter, does it? No. Because all they want is their five million bucks. Right. Right. There's no doubt, though, that when the district court entered its preliminary injunction, it was aware of the Denver probate court proceeding. Absolutely. And ordered your clients, right? Not to dissipate that fund, that account that was in the custody of the Denver probate court and said, in fact, notwithstanding any orders entered by the probate court. I was going to cite that to you. No matter what the petition may have requested, there's no doubt that the preliminary injunction purports to interfere with the exercise of NREM jurisdiction by the Denver probate court. Oh, it absolutely does. Yes. And you and you. And if that happens for the first time in the injunction, you're complaining about it on appeal, right? Yes, absolutely. Thank you. Um, okay, uh, Mr. Lindsay. May please report your honors, uh, as noted by Mr. Lindsay, the law firm of John Culbertson for petitioner. Can we get the pendant appellate jurisdiction matter out of the way? Do you agree? These are not in a strictly intertwined. Oh, wholeheartedly. I think these are not trying at all. Then let's talk about the preliminary injunction. Okay. Then we'll do that. Um, in terms of the preliminary injunction, I'd like to start with the, uh, fact that the, uh, the use of discretion standard applies here. So the judge has to have made a clear error of judgment in order for his discretion to be reversed. And in the, uh, in 1994 and the Brasbury versus IRS decision, uh, this court was very clear that under the standard of review, use of discretion, there will be occasions in which, um, we would have done something differently than the court, but if the court does something differently than we would have had, as long as there's no clear error of judgment, the appellate court will hold it. And this was, um, we're talking about something pretty fundamental here in terms of comedy and the exercise of jurisdiction. Uh, it seems to me that, that where the Denver, uh, probate court is exercising NREM jurisdiction over, uh, funds that the district court is in joining the conservator from dissipating below a certain amount, uh, we're dealing with a pretty fundamental problem of, uh, jurisdiction. Uh, what am I missing? Well, it comes up in the context of the fact that this involves a treaty of the United States and the authority under the New York convention of the court to enforce awards, not just recognize them, but enforce awards in the United States. And that also gets to the issue of federal question of the probate exception. For example, it may well be that the district court has federal jurisdiction to confirm the arbitral award. Yeah, we went through that, um, with your adversary this morning. Um, but that's different from what I'm talking about with respect to this injunction. I thank you. I understand what you're asking. Um, what I'm saying is that, for example, this court has held that the probate exception doesn't apply in cases where federal questions about prior exclusive jurisdiction and NREM. I think it gets to the same issue that the district, according to the, uh, print communications case, courts, federal courts should be very reluctant, extremely reluctant to, um, not exercise their authority in a situation in which they can. And even if there is a court sentence, print communications, I believe that even if there is another state court proceeding, the federal court should be very reluctant to exercise. Let me, let me back up and ask just a couple of preliminary matters. I take it you would concede, one, that the action in Denver before the probate court was an action in NREM. No dispute about that, right? No, no, no, Your Honor. Two, when you went into the district court, let's back up. When you went to the arbitrable panel in Hong Kong, before that panel, I take it this was an in personam action, right? Yes, Your Honor. And that's indeed what the arbitrable panel said. Yes. This is in personam, not in NREM. That's correct, Your Honor. And then you go to the district court and you say, we want you to confirm and enforce the arbitrable award. That was the underlying action. Yes, Your Honor. That's purely in personam. We want you to confirm and enforce a judgment of $5 million plus, adding fees, costs, etc. We're in personam the whole time, right? So far. So far. Except for Denver, which is plainly an NREM action, right? It is. Then we get to the point where you say, Judge, not only do I want you to confirm and enforce a suit sounding in law, you then turn around and you say, I want you to use your equitable power to do something else, something more. I want you to freeze those assets because otherwise we're not going to get paid. We believe they will dissipate the assets and we'll be left with an empty judgment that we're unable to enforce. At that point, you're seeking the equitable power of the district court, right? What we were seeking at that point, Your Honor, was the enforcement of the irrevocable letter of instruction. No, no, no, no, no. One action is in personam to enforce the award. A second action independently is to say, while this case is going forward and before you've even decreed that the arbitrable award should be enforced and confirmed, we want you to seize those assets. We want you to hold on to those assets so that when and if you give us a confirmation and a judgment enforcing it, that there'll be something there to pay us. That was an equitable action, right? The injunctive relief was purely equitable in nature. But there, if I may answer Your Honor's question, the security agreement gave my client a lien. It said a security interest gave you the right to go forward. You never foreclosed on the lien. You never moved to foreclose on the lien, did you? No, we didn't. We simply wanted the money to be held in place. That would have been an equitable action to foreclose on a lien. We didn't do that. No, we didn't. What you did do was say to the court in Chancery, exercise your equitable power and hold the money, which is being held by another court in Denver. I want you to tell me why that isn't classically what the courts have referred to as prior exclusive jurisdiction doctrine. Isn't that lead a princess directly and specifically? Well, again, I think that the issue of prior jurisdiction is another of the issues that, because this is a federal question, it's not a diversity jurisdiction case, Your Honor. It's a federal question. And courts should be very reluctant to dispense with their jurisdiction. The mere fact that you're suing on a federal cause of action does not denude it of an action in personam as opposed to in rem. And then when you proceed in rem, you still run into this problem. I'm having the same trouble that the chief judge had asked you about. How do I get around the fact that a court in equity in Denver seized the money, held the money in a conservatorship, and was involved in how that money was to be disposed of? And you come along in federal court and say, we want you to seize and hold a portion of that money. That's the problem you have, and I don't know how you get around it. I don't think it's an answer simply to say there's a powerful federal interest in enforcing arbitrable awards, which there is in the FAA and in the New York Convention. That's still an in personam action. But what you're doing here is proceeding in equity. And you're seeking to have a federal court hold money that another court had already ordered held. Your Honor, in the Grupo Mexicano case, for example, the United States Supreme Court was very clear in the opening sentence of the decision that what we're talking about here involves money judgments where no lien or equitable interest is asserted. We have asserted a lien on those funds. We mentioned it in our petition. The court below mentioned it in its decision. And we think that that gets us- So far as you have a lien, you can go to the Denver probate court to enforce it, right? But we can also go to the federal court, Your Honor, to enforce it. And I don't know how, given that the Denver probate court is already, as you agree, exercising in-ramp jurisdiction. Only one court can do that at a time over arrest. Can I ask a question going back to where Judge Marcus had left off? So Judge Marcus asked you about what you sought. What did you actually seek in the ex parte motion that ultimately led to the preliminary injunction? We sought- Initially, we sought a TRO. TRO of what, though? On what? Did you seek- On those funds. On what funds? The funds that Mr. Gatley is holding as conservator of the Denver probate court action. So you agree, going to Judge Marcus's question, that you sought a TRO or what ended up as a preliminary injunction on the money that was being held by the Denver probate court, and not just a freeze order of 5 million bucks? We were going specifically- That's the only asset we know of that there is. Mr. Horn is in Thailand. Apparently, Mr. Gatley hasn't even heard from him in years. So this money was pursuant to, again, the letter of instruction and the security interest specifically sent to Mr. Gatley for disbursement to the various persons who were owed money by Mr. Horn. We were one of them. Apparently, we're the last of them. And that money is what's specifically intended. It's right in the agreements that that money was intended to be the money. It was the money, the AVI, from which my client was to be compensated. So I think you said earlier, Judge Luck, that this is a peculiar case or something to that effect, an odd postured case. Have you ever seen a case where we are asked to abstain or where a federal court is asked to abstain from a portion of litigation, but not the litigation itself? I haven't seen a case like that. I have not seen a case like that, Your Honor. I don't know the answer to that. In other words, the way this normally comes up is you file a lawsuit. Someone files a motion to dismiss and says, you should abstain because case Y is being litigated in this other venue, right? Isn't that how this all comes up? That's how it came up in Prince's Leda. That's how it came up in the Marshall case. That's how it comes up in Colorado River. That's how it comes up, right? Yes, that's how it comes up. That's not what we have here. In other words, nobody here disagrees that it's perfectly okay for you to domesticate a judgment of foreign arbitration award under the New York Convention in the district court. Nobody disputes that. In other words, the underlying litigation has no problem here. The only reason this came up is because in the district court's order, it then said that the money that it was going to attach for judgment or freeze or however you want to put it, was the money being held by Mr. Galley as conservator under the jurisdiction of the Denver Proving Court, correct? That was the money we were seeking to recover from. Right. I'd be interested. Is there any case where we've been asked to abstain under similar circumstances of a slice of a litigation that otherwise is perfectly fine in federal court? I don't know the answer to that, Your Honor. But quite honestly, I don't know if there is. But let me go back and ask the question this way, counsel, if I can. I'm looking at what you denominate petitioner's ex parte motion for a TRO and for an expedited hearing for a preliminary injunction. That was in addition to obviously filing the underlying action, asking the district court to confirm and enforce the Hong Kong arbitrable award. In this ex parte motion for a TRO and for an expedited hearing on a preliminary injunction, you write the following. And I quote on the very first page. In addition, Noble requests this court set an expedited hearing for a preliminary injunction on these claims to enjoin the respondents from using, transferring or encumbering the funds deposited for Paul Horn and GLG's trust account in any other account. And then at the back end of the same TRO, you ask for the same equitable relief to enjoin the dissipation, the movement of those funds, which were in the control of the court in Denver, right? Yes. Okay. That was an equitable request, right? Yes. And the district court granted your application in equity saying notwithstanding any order entered by the probate court in the matter of Paul Clayton Horn, it is ordered that GAIA slash GLG shall not dissipate, transfer, send, sequester, deplete, or cause the dissipation, et cetera, of the sum of $10 million. So the court in Miami said you can't dissipate these assets, even though these very assets were in the control of a court in rem, in an in rem action in Denver. Having said that, how do I distinguish or get around the doctrine and the case of Enlita Princess? I'm having trouble understanding how I can square that circle. Again, I go back to the agreements that were at the basis of this whole transaction, the facility agreement, the irrevocable error instruction, and the security agreement. I've got it. Very clear about where the money was supposed to come from. And they're very clear about the fact that there was a lien on those very funds that Mr. Gatley was holding. Okay. Thank you, Mr. Lansing. Mr. McCann. Thank you, Your Honor. You saved five minutes. I'll be very brief unless there's some other questions. In answer to Judge Luck's question, I don't know the answer whether or not any of the multitude of cases that we cited on abstention had a situation where a piece of it was abstained because there was an injunctive relief sought against property and allowed... My only comment is I have two experienced lawyers here who have dove into this, both in briefing and now in oral argument, and not one person can tell me a procedural posture that's like this. I don't know the answer because I would have to go back and reread those cases to see if that distinction was made. I just don't know. I just don't know the answer. That's the only thing that came up that I thought I needed to address in this rebuttal unless Your Honors have other questions. Thank you. Thank you, Mr. McCann. We'll move to the last case, Sanchez.